# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WISCONSIN

JUAN CARLOS CHAVEZ,

    Petitioner,

v.                                                  Case No. 09-C-969

JEFFREY PUGH, Warden
Stanley Correction Institute,[1]

    Respondent.

## **DECISION AND ORDER**

On October 9, 2009, petitioner Juan Carlos Chavez[2] filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner pled guilty and was convicted of homicide by intoxicated use of a vehicle, first-degree reckless endangerment and operating a motor vehicle while intoxicated causing injury. On July 20, 2007, the petitioner was sentenced to seventeen years and ten months of initial confinement followed by fifteen years of extended supervision.

---

[1] On September 15, 2011, the petitioner was transferred from Green Bay Correctional Institution, where William Pollard is warden, to Stanley Correctional Institute, where Jeffrey Pugh is warden. Pursuant to Rule 2(a) of the Rules Governing Section 2254 Cases, this court substituted Mr. Pugh as the respondent by order dated October 13, 2011.

[2] The plaintiff alternately refers to himself as "Juan Carlos Chavez," "Juan C. Chavez," or "Juan Chavez-Chavez." Documents from his state court proceedings identify him as "Juan C. Chavez-Chavez." This court will refer to the petitioner as "Juan Carlos Chavez," because that is the name the petitioner entered on his petition for a writ of habeas corpus.

The petitioner challenges the March 25, 2009, judgment of his conviction, which was affirmed by the Wisconsin Court of Appeals on September 17, 2008. In his petition, the petitioner alleges that: (1) he should be allowed to withdraw his plea because it was not knowing and voluntary; (2) he should be allowed to withdraw his plea as a matter of right as he was never informed that his attorney could challenge the admission of blood samples; (3) he should be allowed to withdraw his guilty plea due to his attorney's failure to compute the correct amount of time that he was facing; (4) he should be granted a new plea hearing because his amnesia may have precluded a fair trial; (5) he is entitled to be resentenced because his attorney failed to challenge inaccurate information in the pre-sentence investigation report; (6) he is entitled to a "nunc pro tunc" competency hearing to determine if he was indeed competent at the time he entered his plea; (7) he is entitled to withdraw his guilty plea because critical information was overlooked at his competency hearing; and (8) he is entitled to withdraw his plea because his attorney failed to obtain or request the presence of a psychiatrist to assist with his defense.

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. Venue is proper under 28 U.S.C. § 1391. The case was assigned according to the random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72.1 (E.D. Wis.). The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73 (E.D. Wis.).

United States District Judge William C. Griesbach conducted a preliminary examination of the petition in accordance with Rule 4 of the Rules Governing § 2254 Cases. By order filed July 9, 2010, Judge Griesbach determined that he "cannot conclude from the face of the petition alone that [the petitioner] will be unsuccessful." (Judge Griesbach's Order of July 9, 2010, at

2). Thus, Judge Griesbach ordered the respondent to answer the petition for a writ of habeas corpus. The respondent has answered and the parties have briefed the petition for a writ of habeas corpus. Therefore, the petition is ready for disposition and will be addressed herein.

## **APPLICABLE LAW**

The habeas corpus statute was amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub.L. No. 104-132, 100 Stat. 1214 (1996) which provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This provision entitles federal courts, acting within their jurisdiction, to interpret the law independently, but requires them to refrain from "fine tuning" state court interpretations. Lindh v. Murphy, 96 F.3d 856, 870-877 (7th Cir. 1996), rev'd on other grounds, 521 U.S. 320 (1997). "Thus, although this court reviews the state court's legal conclusions and mixed questions of law and fact de novo, that review is 'tempered by AEDPA's deferential constraints.'" Hereford v. McCaughtry, 101 F. Supp. 2d 742, 746 (E.D. Wis. 2000) (quoting Sanchez v. Gilmore, 189 F.3d 619, 623 [7th Cir. 1999]).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme

Court] precedent." Washington v. Smith, 219 F.3d 620, 628 (7th Cir. 2000) (quoting Williams v. Taylor, 529 U.S. 362, 404-05 [2000]). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> under the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

Washington, 219 F.3d at 628. The court went on to explain that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever the state court 'unreasonably applie[d] [a clearly established] principle to the facts of the prisoner's case.'" Id. (quoting Williams, 529 U.S. at 413).

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." Hennon v. Cooper, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." Hall v. Washington, 106 F.3d 742, 748-49 (7th Cir. 1997). In Morgan v. Krenke, the court explained that:

> [u]nreasonableness is judged by an objective standard and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

232 F.3d 562, 565-66 (7th Cir. 2000) (quoting Williams, 529 U.S. at 411). Therefore, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. Washington, 219 F.3d at 628.

## **RELEVANT FACTUAL BACKGROUND**

The facts of this case were set forth by the Wisconsin Court of Appeals in its decision:

> [The petitioner] pled guilty to one count of homicide by intoxicated use of a vehicle, one count of first-degree reckless endangerment, and one count of operating a motor vehicle while intoxicated causing injury. The court sentenced him to twelve years of initial confinement and ten years of extended supervision on the homicide count, five years of initial confinement and five years of extended supervision on the reckless endangerment count, and ten months in jail on the operating while intoxicated count, all to be served consecutively. [The petitioner] was charged for driving while intoxicated the wrong way onto an interstate highway and crashing head-on into a car, killing Scott Procknow, who was twenty-four years old at the time, and injuring Lauren Procknow, Scott's wife. [The petitioner] was also seriously injured in the crash.

(Respondent's Answer to the Petition for a Writ of Habeas Corpus [Answer], Exh. E at 2).

The petitioner appealed his sentence and conviction to the Wisconsin Court of Appeals. The petitioner's appellate counsel filed a no-merit brief on petitioner's behalf, pursuant to Anders v. State of California, 386 U.S. 738 (1967). The petitioner filed a response to the brief, and his counsel filed a supplemental no-merit report.

The Wisconsin Court of Appeals summarily affirmed the petitioner's conviction and sentence. The court held that an argument on the basis that the petitioner did not knowingly, intelligently, and voluntarily enter his plea lacked arguable merit because his plea colloquy satisfied the requirements set forth in Wis. Stat. § 971.08 and State v. Bangert, 131 Wis. 2d 246, 261-72, 389 N.W.2d 12 (1986). The court found that "the circuit court personally spoke to [the petitioner], carefully and thoroughly explaining the nature of the charges against him, the potential penalties for each charge, and the constitutional rights he was waiving by pleading guilty." (Answer, Exh. E at 3). The court of appeals also concluded that the petitioner's contention that counsel's alleged miscalculation of potential prison exposure lacked merit

because the petitioner failed to state that counsel misinformed him and, more importantly, the circuit court had properly informed him of his potential prison exposure. Additionally, the court of appeals found that the petitioner was not allowed to withdraw his pleas on the ground that his amnesia precluded a fair trial because he waived any nonjurisdictional defenses when he entered his pleas and the evidence of his guilt was overwhelming. The court of appeals also addressed the petitioner's argument that the circuit court relied on inaccurate information in the presentence investigation report. The court found that the challenge lacked merit because the petitioner failed to establish any contradicting information and because the medical evidence supported the presentence investigation report. Finally, the court of appeals addressed the petitioner's competency arguments and found that his trial counsel did not err in failing to challenge the psychiatrist's report with an earlier psychiatrist report or by failing to hire a psychiatrist for trial, as the petitioner did not go to trial.

The petitioner filed a pro se petition for review. The Wisconsin Supreme Court denied review on November 17, 2008. The petitioner also filed a motion for post-conviction relief with the Kenosha County Circuit Court, which was denied on May 29, 2009. The petitioner did not appeal the motion's denial. Therefore, any issues he raised in that motion which he did not raise in his previous appeal have not been fairly presented and this court will not consider them.

## **ANALYSIS**

### Challenges to the Plea

The petitioner asserts that he should be allowed to withdraw his plea on the ground that it was not knowing or voluntary. A defendant's plea of guilty or no contest is valid if entered knowingly, voluntarily, and intelligently. North Carolina v. Alford, 400 U.S. 25, 31 (1970); Boykin

v. Alabama, 395 U.S. 238, 242 (1969). Voluntariness of the plea is determined by "considering all of the relevant circumstances surrounding" the plea. Brady v. United States, 397 U.S. 742, 749 (1970). A plea is voluntary if not induced by threats or misrepresentations and if the defendant is made aware of the direct consequences of his plea. Id. at 755. The defendant "need not be made aware of every possible consequence." St. Pierre v. Walls, 297 F.3d 617 634 (7th Cir. 2002). Rather, he must be aware of the "relevant circumstances and likely consequence" surrounding the plea. Brady, 397 U.S. at 748. The United States Supreme Court has held that a knowing and voluntary plea bars any later challenge to alleged constitutional violations that occurred prior to the plea. Tollet v. Henderson, 411 U.S. 258, 265-67 (1970) (citing Brady, 397 U.S. at 750; McMann v. Richardson, 397 U.S. 759 [1970]; Parker v. North Carolina, 397 U.S. 790 [1970]). The rationale for the bar is that "a guilty plea represents a break in the chain of events which has preceded it in the criminal process." Tollett, 411 U.S. at 267.

In support of his claim, the petitioner asserts several reasons why his plea was not knowing and voluntary. He contends that he was young, inexperienced, and relied on an interpreter during the plea colloquy. However, as the court of appeals noted, the petitioner's trial counsel is fluent in Spanish and the petitioner confirmed that his trial counsel had read and translated the relevant jury instructions for him before he entered his plea. The circuit court judge also confirmed more than once that the petitioner was "able to communicate with [his] lawyer successfully" and was "able to converse with [his lawyer] in Spanish without any problem." (Answer, Exh. Q at 6; 22). Additionally, the petitioner maintains that the interpreter mistranslated words and confused his question "are you sure?" for an affirmative response of "sure." However, the record shows that the petitioner responded "sure" to only a few questions.

He usually responded with a clearly affirmative, "yes." Id. at 5-22. Moreover, the circuit court judge asked the petitioner if the translator spoke Spanish clearly and if he was able to understand the translator. The petitioner answered "yes" to both questions. Id. at 6.

The petitioner also argues that the court should have "done more" during the plea colloquy, stating that "probing questions may not always be necessary, but they help to ensure a defendant's understanding and they help to complete the hearing record." (Petitioner's Reply to Respondent for Writ of Habeas Corpus [Reply] at 3-4). However, a review of the transcript from the plea hearing shows that the circuit court judge began the proceedings by telling the petitioner that he could interrupt and ask questions if he did not understand a word or a concept. See Exh. Q at 5. In addition, the circuit court judge repeatedly asked the petitioner if he understood what the judge was saying. See id., at 5-23. Furthermore, during the plea colloquy, the judge explained each element of each of the crimes to the petitioner using clear and simple words. The petitioner acknowledged that he understood each separate element. Id. Finally, the court gave an in-depth explanation of the Constitutional rights that the petitioner was waiving by entering a guilty plea. Id.

The petitioner also asserts that the plea colloquy did not comport with the requirements of Wis. Stat. § 971.08 and Bangert. Those requirements are state, not constitutional, requirements. This court may only grant habeas if the state proceedings were contrary to, or an unreasonable application of, clearly established federal law. Thus, this contention cannot be addressed by this court through habeas review.

The petitioner further states that he was never informed that his attorney could challenge the admission of blood samples. In McMann, 397 U.S. at 769-70, the Court addressed whether

an incorrect assessment of the admissibility of certain evidence invalidates an otherwise knowing, voluntary, and intelligent plea. The court stated:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the fact, as he understands them, would be viewed by a court . . . Questions . . . cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.

Id. Thus, federal law is clear that risk is inherent in a guilty plea. The fact that the petitioner's counsel may have misinformed the petitioner about whether the blood samples were admissible in itself would not negate a knowing, voluntary, and intelligent guilty plea. Moreover, a review of the plea colloquy shows that the judge carefully informed the petitioner that one of the rights he was waiving by entering a plea was the right to challenge all of the state's evidence at trial. (Answer, Exh. Q at 7-11). In addition, the state court of appeals noted that under Wisconsin's implied consent law, the blood tests would have been admissible anyway. Consequently, the petitioner's claim lacks a showing of prejudice.

The petitioner next maintains that he should be granted a new plea hearing on the ground that his amnesia may have precluded a fair trial. The petitioner states that "[u]nder state and federal law, an amnesiac who goes to trial has the right to a hearing on what extent his amnesia impaired his ability to present his defense." (Petitioner's Response to a No-Merit Report [Petitioner's Brief] at 15). He further states that if he had known that "extra scrutiny would have had to be employed to ensure the fairness of the trial," he would not have pled guilty. Id. at 16. Thus, he appears to be asserting that his plea was not knowing and voluntary

because he did not know that the trial would undergo "extra scrutiny" due to his amnesia. Id.

The court of appeals correctly found that when the petitioner entered his plea, he waived any nonjurisdictional defenses he had to the pleas. See Tollett, 411 U.S. at 267, and State v. Princess Cinema of Milwaukee, Inc., 96 Wis. 2d 646, 651, 292, N.W.2d 807 (1980). In addition, as the court found, the evidence of petitioner's guilt is overwhelming and there is "a lack of any reasonable hypotheses of innocence. " (Answer, Exh. E at 4). Moreover, the petitioner did not go to trial. Therefore, the petitioner's reliance on State v. McIntosh, 404 N.W.2d 557 (Wis. App. 1987), is misplaced.

Accordingly, based on a careful review of the record, this court finds that the Wisconsin court of appeals' decision that the petitioner's guilty pleas were voluntarily, knowingly, and intelligently entered was not contrary to, nor an unreasonable application of, clearly established law. The petitioner's petition for a writ of habeas corpus on these grounds will be denied.

Ineffective Assistance of Counsel

A defendant may claim that ineffective assistance of counsel prevented him from entering a knowing and voluntary plea. See Tollett, 411 U.S. at 267. "Where . . . a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" Hill v. Lockhart, 474 U.S. at 56. The two-part standard for evaluating ineffective assistance of counsel claims set forth in Strickland v. Washington, 466 U.S. 668 (1984), is also applicable to ineffective assistance of counsel claims arising out of the plea process. Hill, 474 U.S. at 57. Strickland is "clearly established Federal law, as determined by the Supreme Court of the United States." See Washington, 219 F.3d at 627-28.

- 10 -

Pursuant to Strickland, a petitioner "must show that counsel's performance was deficient . . [and] . . . the deficient performance prejudiced the defense." 466 U.S. at 687. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Id.

The first component requires a petitioner to show that his trial counsel "made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment." Id. In other words, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." Id. Under the second component, a petitioner "must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

In the context of guilty pleas, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. In Hill, the Supreme Court explained that "[i]n many guilty plea cases, the 'prejudice' inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial." Id. The Court went on to explain:

> For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.

Id. at 59-60 (citations omitted). Although dicta, this language provides guidance in determining what will satisfy the "prejudice" requirement.

If the court determines that the petitioner has failed to satisfy either component of the Strickland test, it need not address the other. See Chichakly v. United States, 926 F.2d 624, 630-31 (7th Cir. 1991). Therefore, this court must determine whether the Wisconsin Court of Appeals' rejection of the petitioner's ineffective assistance of counsel claim was either "contrary to, or involved an unreasonable application of" the performance and prejudice rules set out in Strickland. See Washington, 219 F.3d at 628. As the Wisconsin Court of Appeals applied the performance and prejudice rules as set out in Strickland, this court need only address whether the court's decision involved an unreasonable application of Strickland. See Williams v. Taylor, 529 U.S. 362, 417 (2000) (Rehnquist, C.J., concurring in part and dissenting in part) ("Generally, in an ineffective-assistance-of-counsel case where the state court applies Strickland, federal habeas courts can proceed directly to 'unreasonable application' review.")

The petitioner asserts that he should be allowed to withdraw his guilty plea because his attorney failed to compute the correct amount of his potential prison exposure. The Wisconsin Court of Appeals addressed this claim along with petitioner's claim that his plea was not knowing and voluntary and found that it did not affect the adequacy of the plea colloquy. The court noted that the petitioner did not "say that his trial counsel misinformed him, nor what counsel may have told him." (Exh. E at 3-4). The court rejected the claim because the circuit court, during the plea colloquy, correctly informed the petitioner of the potential prison exposure he faced by entering the guilty pleas. As such, any possible error by trial counsel in computing prison exposure was corrected by the circuit court. Therefore, this agrees with the court of appeals, which found that the performance did not prejudice the petitioner.

With respect to his claim that his attorney failed to challenge inaccurate information in the pre-sentence investigation report, the petitioner contends that his own statement in the report regarding the amount of alcohol he consumed before the accident was inaccurate due to his amnesia. A sentence must be set aside when the defendant can show that false information was part of the basis for the sentence. United States ex rel. Welch v. Lane, 738 F.2d 863, 865 (7th Cir. 1984). To prevail on this claim the petitioner must show "both that the information was inaccurate, and that the court actually relied on the inaccurate information in the sentencing." Id.

The state court of appeals held that this challenge lacked arguable merit. The court noted that the petitioner failed to establish "that the information about the number of drinks he consumed was, in fact, inaccurate" and also observed that the evidence did not support the petitioner's argument. (Answer, Exh. E at 5). The court of appeals stated:

> Specifically, [the petitioner] argues that the PSI writer should have investigated his statement about the number of drinks he had consumed the night of the accident. He asserts that this conflicts with a doctor's report that showed he had amnesia about the events. Counsel responds that [the petitioner] has not established that the information about the number of drinks he consumed was, in fact, inaccurate, and further, that the medical evidence does not support the argument. We agree with counsel that a challenge on this basis lacks arguable merit.

Id. In light of these facts, this court finds that it was not an unreasonable application of Strickland to find that the petitioner's counsel was not ineffective for failing to challenge this statement in the presentence report.

The petitioner also contends that his counsel was ineffective because information was overlooked at the petitioner's competency hearing. Specifically, the petitioner asserts that his trial counsel should have challenged the March 14, 2007, report of Dr. John Pankiewicz, M.D.,

- 13 -

which found the petitioner competent, because it conflicted with an earlier report from Dr. Sabsevitz dated February 6, 2007, which the petitioner asserts found him incompetent. The petitioner also maintains that he is entitled to a nunc pro tunc competency hearing to determine if he was indeed competent at the time he entered his plea. He lists these in his petition and brief as separate bases for challenging his conviction due to the ineffective assistance of counsel. See Petitioner's Petition at 8 and Petitioner's Brief at 2. However, it appears that these grounds are based on the same set of facts. Thus, the court will address these as a single ground for relief.[3] As the state court of appeals observed, Dr. Pankiewicz's report acknowledged that the petitioner had amnesia, but found that it was limited to a circumscribed period of time surrounding the accident. That report further found "'no evidence to indicate that [the petitioner] has any substantial on-going cognitive or memory based deficits.'" (Answer, Exh. E at 6). Moreover, a review of the record reveals that petitioner's counsel expressly reserved the issue of the petitioner's amnesia in the event it limited his ability to present a proper defense. See Answer, Exh. P. at 3-4. Thus, this court agrees with the court of appeals' finding that counsel was not ineffective for "failing to challenge the later report with the earlier report." Id.

The petitioner also claims that his counsel was ineffective because he did not obtain or request a psychiatrist to assist with the petitioner's defense. As the court of appeals stated, the petitioner did "not explain what assistance the psychiatrist would have provided, or why he needed such assistance." Id., Exh. E at 5-6). Moreover, the petitioner did not go to trial.

---

[3] The petitioner himself acknowledges that these grounds are one and the same. In discussing the information that was overlooked at the competency hearing, the petitioner notes that "[t]his may be a restatement of issue 6 [which asserts the petitioner is entitled to a nunc pro tunc competency hearing]. However, it merits reiteration." (Petitioner's Brief at 14).

Accordingly, this court finds that the petitioner has failed to demonstrate that the Wisconsin Courts of Appeals' decision was contrary to, or an unreasonable application of, clearly established law. Accordingly, his petition for a writ of habeas corpus on the ground that he received ineffective assistance of trial counsel will be denied.

## CERTIFICATE OF APPEALABILITY

A certificate of appealability may "only issue if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, the petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 [1983]). In this case, reasonable jurists would not find the court's decision to deny the petition on substantive grounds debatable or wrong. Thus, the court will deny a certificate of appealability as to all of the petitioner's claims.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus be and hereby is **denied**.

**IT IS FURTHER ORDERED** that this action be and hereby is **dismissed**.

**IT IS ALSO ORDERED** that a certificate of appealability be and hereby is **denied**.

**IT IS ALSO ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 21st day of May, 2012.

BY THE COURT:

s/Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge